THRIFT FEDERAL SAVINGS & LOAN ASSOCIATION OF CLEVELAND *v.*
OVERTON; HOME SAVINGS & LOAN COMPANY, APPELLEE, *v.*
FIDELITY & DEPOSIT COMPANY OF MARYLAND, APPELLANT.

[Cite as Thrift Fed. S. & L. Assn. of Cleveland *v.* Overton (1990),
56 Ohio St. 3d 48.]

(No. 89-1545—Submitted October 3, 1990—Decided December 5, 1990.)

*Schwartz, Kelm, Warren & Rubenstein, Richard A. Frye* and *Joanne F. Weber; Freeman & Freeman* and *Harold J. Freeman,* for appellee.

*Arter & Hadden, Irene C. Keyse-Walker, Kris H. Treu* and *James H. Grove,* for appellant.

DOUGLAS, J. The issue before this court is whether Home Savings, a judgment creditor of Republic Escrow, can recover against Fidelity on the "Comprehensive Dishonesty, Disappearance and Destruction Policy" issued to Republic Escrow by Fidelity covering losses due to the fraudulent or dishonest acts of Republic Escrow's employees. We determine that the policy at issue does not cover Republic Escrow for any loss it might have sustained in the case at bar and, accordingly, we find that Home Savings has no right to recover under the policy.

The policy issued to Republic Escrow by Fidelity provides, in relevant part, that:

"* * * [Fidelity] in consideration of the payment of the premium, and subject to the Declarations made a part hereof, the General Agreements, Conditions and Limitations and other terms of this Policy, agrees with the Insured, in accordance with such of the Insuring Agreements hereof as are specifically designated by the insertion of an amount of insurance in the Table of Limits of Liability, to pay the Insured for:

"* * *

"I. Loss of Money, Securities and other property which the insured shall sustain, to an amount not exceeding in the aggregate the amount stated in the Table of Limits of Liability applicable to this insuring Agreement I, resulting directly from one or more fraudulent or dishonest acts committed by an *Employee*, acting alone or in collusion with others.

"Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent:

"(a) to cause the Insured to sustain such loss; and

"(b) to obtain financial benefit for the Employee, or for any other person or organization intended by the Employee to receive such benefits, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment." (Emphasis added.)

The policy defines an "employee" as follows:

"'Employee' means any natural person (except a director or trustee of the Insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the Insured in the ordinary course of the Insured's business during the Policy Period and whom the Insured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service, but does not mean any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character. * * *"

The parties to the present appeal agree that Kline was the president of Republic Escrow, a corporation, at the time Kline misappropriated Home Savings' funds. Hence, Kline is an "employee" within the meaning of the policy and neither party to this appeal seriously argues otherwise.

Additionally, the policy also contains a list of exclusions and provides, in relevant part, as follows:

"Exclusions

"Section 2. This Policy does not apply:

"(a) to loss due to any fradulent

[*sic*], dishonest or criminal act by any Insured or a partner therein, whether acting alone or in collusion with others[.]"

Fidelity contends that Kline was the "alter ego" of Republic Escrow and, hence, an "insured" within the meaning of the policy. Therefore, according to Fidelity, any loss attributable to Kline's criminal and dishonest acts is expressly excluded from coverage under Section 2(a) of the agreement. Conversely, Home Savings argues that Republic Escrow is the "insured" within the meaning of the policy and that Republic Escrow, a corporation, is an entity separate and distinct from its owner, Robert Kline. Thus, Home Savings suggests that the exclusion contained in Section 2(a) above does not apply since Kline's criminal acts do not affect or implicate Republic Escrow.

The trial court found that Kline was the owner and operator of Republic Escrow and the court of appeals adopted this particular finding. In its brief before the court of appeals, Home Savings admitted that, for all practical purposes, Kline was Republic Escrow. The court of appeals, perhaps accepting this admission, determined that Kline was the alter ego of Republic Escrow. Home Savings cannot now be heard to argue that Republic Escrow and Kline are not one and the same. Further, given the state of the record before us, we are unwilling to disturb the finding by the court of appeals that Kline was the alter ego of Republic Escrow.

As Republic Escrow's alter ego, or "second self," Kline's acts were the acts of the corporation. The separate identities of Kline and Republic Escrow ceased to exist such that Kline's criminal and dishonest acts were also the acts of Republic Escrow. Therefore, Republic Escrow could not recover under its policy with Fidelity. Section 2(a) of the policy excludes from coverage any loss due to the criminal and dishonest acts of the "insured." Whether the "insured" is Kline or Republic Escrow in the case at bar is immaterial, since the individualities of Kline and his corporation are nonexistent.

The policy issued to Republic Escrow by Fidelity also contains an additional exclusion contained in an "amendatory endorsement" to the policy. The amendatory endorsement provides in relevant part:

"2. In addition to the existing Exclusions in the attached Policy, * * * [Fidelity] shall not be liable under any Insuring Agreement for:

"* * *

"(ii) All damages of any type for which the Insured is legally liable, *except direct compensatory damages arising from a loss covered under this Policy.*" (Emphasis added.)

Home Savings argues that the exception to the additional exclusion contained in the amendatory endorsement provides for direct compensation to Home Savings by virtue of Home Savings' default judgment against Republic Escrow. However, the exception to the exclusion contained in the amendatory endorsement applies only to a loss covered under the policy. We have just determined that any loss sustained by Republic Escrow as a result of Kline's criminal and dishonest acts is *not* covered under the policy but, rather, is expressly excluded from coverage. Accordingly, Home Savings' argument is not persuasive.

The court of appeals also determined that Home Savings was "equitably subrogated" to the rights of Republic Escrow so that Home Savings could enforce the provisions of the policy against Fidelity. In their briefs before this court, the parties to this ap-

peal argue, at some length, concerning the applicability of the doctrine of equitable subrogation. However, we have determined that Republic Escrow could not recover under the policy issued to it by Fidelity and, hence, a subrogee to the rights of Republic Escrow would, likewise, be unable to recover. This is so since no subrogee may succeed to rights not possessed by its subrogor. *Chemtrol Adhesives, Inc.* v. *American Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St. 3d 40, 537 N.E. 2d 624, paragraph one of the syllabus. Therefore, whether or not the doctrine of equitable subrogation applies in the case at bar is irrelevant.

Fidelity contends that Home Savings lacks standing to maintain an action against it since, according to Fidelity, the policy issued to Republic Escrow does not obligate Fidelity to pay Home Savings, a third party, for damages sustained as a result of the dishonest acts of Republic Escrow's employees. However, given our determination above, it is immaterial whether or not Home Savings can seek coverage which does not exist. Fidelity also argues that it is not liable to Home Savings under the terms of the policy due to the untimely filing of a proof of loss and untimely notice of the claim. However, we need not determine this issue since the subject policy does not, in any event, provide coverage for the claim.

For the foregoing reasons, the judgment of the court of appeals is reversed and final judgment is entered for appellant.

*Judgment reversed.*

MOYER, C.J., and HOLMES, J., concur.

WRIGHT and H. BROWN, JJ., concur in judgment only.

SWEENEY and RESNICK, JJ., dissent.

H. BROWN, J., concurring in judgment only. I cannot agree that "the individualities of Kline and his corporation [Republic Escrow] are nonexistent." It is hornbook law that a corporation is a separate legal entity from its shareholders, even when there is only one shareholder. *E.g., First Natl. Bank of Chicago* v. *Trebein Co.* (1898), 59 Ohio St. 316, 52 N.E. 834, paragraph one of the syllabus ("In contemplation of law a corporation is a legal entity, an ideal person, separate from the real persons which compose it. * * *"); *BeWigged by Suzzi, Inc.* v. *Atlantic Dept. Stores* (1976), 49 Ohio App. 2d 65, 68-69, 3 O.O. 3d 125, 127, 359 N.E. 2d 721, 725, fn. 1 (single, human shareholder); *General Motors Corp.* v. *Moffett* (1927), 27 Ohio App. 219, 160 N.E. 878 (wholly owned subsidiary).

In certain situations, of course, courts can "pierce the corporate veil" and treat both the shareholder and his corporation as a single entity. However, this is an extraordinary step which is only taken in those situations where the corporate entity is being used as a cloak for fraud or illegality, *e.g., First Natl. Bank of Chicago, supra,* paragraph two of the syllabus (fraudulent conveyance to corporation), or where the sole shareholder has disregarded the separate corporate entity in business dealings with third parties, see, generally, Annotation, Stockholder's Personal Conduct of Operations or Management of Assets as Factor Justifying Disregard of Corporate Entity (1972 & Supp. 1990), 46 A.L.R. 3d 428, and cases therein cited. In the instant case, neither of these conditions is present, yet the majority disregards Republic Escrow's existence as a separate legal

entity. In so doing, the majority renders the fidelity bond a nullity, and creates a precedent which imperils the limited liability enjoyed by the thousands of Ohioans who legitimately conduct their business in the form of a "one-man" corporation.

However, I concur in the judgment. Section 8 of the fidelity bond requires that the insured "file [a] detailed proof of loss, duly sworn to, with the * * * [insurer] within four months after the discovery of loss" as a prerequisite to recovery.

No proof of loss was filed until Kline sent one from jail in May 1985.

This was over a year after the embezzlement, and seven months after Home Savings served Fidelity with its third-party complaint. Viewing the facts most favorably to Home Savings, it is clear that the proof of loss was not timely filed. Even if the service of process on Fidelity is taken as the date on which Republic Escrow "discovered" the loss, the proof of loss was three months late. Accordingly, Republic Escrow and, by extension, Home Savings, had no right to collect from Fidelity.

WRIGHT, J., concurs in the foregoing concurring opinion.