**LeROUX'S BILLYLE SUPPER CLUB et al.; DVJ's Plumbing, Appellee,**

v.

**MA, Appellant.**

[Cite as *LeRoux's Billyle Supper Club v. Ma* (1991), 77 Ohio App.3d 417.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–289.

Decided Sept. 30, 1991.

*Steven L. Crossmock*, for appellee.

*Gerald L. Mills*, for appellant.

*Per Curiam.*

This is an appeal of a judgment of the Lucas County Court of Common Pleas which, after a trial to the bench, granted judgment in favor of appellee, DVJ's Plumbing, Inc. ("DVJ's") in the amount of $8,886.88 plus costs. Appellant, Jimmy Y.H. Ma, appeals that judgment and asserts a single assignment of error:

"The trial court erred in finding that liability for the debt of Lan's of Ohio, Inc. to Appellee could be imposed upon Appellant personally by 'Piercing the Corporate Vail [sic].' "

This case was instituted in the court below by LeRoux's Billyle Supper Club, Inc., as a foreclosure action. Appellee was a named defendant in that action because it had filed a mechanic's lien against the property which was the subject of the foreclosure. Appellant and Lan's of Ohio, Inc. ("Lan's") were permitted to intervene in the action as defendants because of their claimed interest in that same property. After appellant intervened, appellee filed a cross-claim against him and Lan's. Appellee asserted it had entered into a written contract to perform repair work for appellant and Lan's, that the work was completed without exception, and that appellant and Lan's had breached the contract by failing to pay the amount due thereunder. By stipulation and judgment entry all other claims in the foreclosure action were dismissed.

Trial on appellee's claim was held on March 14, 1990. At that trial, Denzyl D. Jones, President of DVJ's, and Jimmy Y.H. Ma, President of Lan's, were sole witnesses. Their testimony, exhibits and other evidence in the record of this case revealed the following relevant facts.

Appellant, who through various corporations operated at one time at least four other restaurants in Chicago, Illinois, began operation of Lan's New China Restaurant ("New China") in Toledo, Ohio in March 1988. The restaurant was owned by Lan's, a corporation organized and funded by appellant. Appellant was the sole shareholder and, as president, he was an officer of the corporation who personally supervised the management of New China. At the time of incorporation, appellant capitalized Lan's with an investment of $200. Prior to opening New China, appellant obtained a $20,000 loan from a Chicago, Illinois, bank. This loan was guaranteed by appellant and one of his Illinois corporations. The $20,000 was used to renovate and commence operation of the Toledo restaurant. It is unclear from the evidence offered at trial as to whether the $20,000 was additional capital or directly paid by appellant for renovations and operations. By the time New China closed in February 1989, appellant had borrowed at least $40,000 in order to keep the restaurant operating.

Appellant testified that for July, August, September, October, and the first half of November of 1988, New China had a negative cash flow. At that point in time, a gas leak forced the restaurant to close. Cindy Dixon, manager of New China, contacted DVJ's and entered, as an agent of the corporation, into a contract with appellee for the repair of the leak. The contract terms required that $1,000 be paid upon the completion of the repair work and that the balance be paid in weekly installments of $1,000 each. It is uncontroverted that DVJ's received $1,000 in cash and a check for $1,000, which left a balance of $8,886.88. No other payments were ever made on the contract.

No corporate records were ever introduced into evidence. Appellant testified that that he had an accountant who took care of the corporate books but these were never requested or produced. The evidence as to how corporate debts, e.g., loans, payroll and payments for supplies were paid is either not in evidence or unclear from the evidence presented. Appellant admitted that the manager of New China had no authority to issue checks in the corporate name. At one point appellant testified that the payroll for New China employees came from the corporations. However, it was not determined whether payroll checks were ever issued from Lan's, from appellant's other corporations, or if the funding for the payroll was merely derived from the other corporations. Conversely, appellant then testified that the funds for payroll, payment to suppliers, etc., came from meal sales in New China. Nonetheless, appellant did admit that he used some personal funds to pay the debts of Lan's and that at the time the corporation entered into the contract with DVJ's, the corporate financial situation was bleak.

In his single assignment of error, appellant contends that the mere domination or control of a corporation by a sole shareholder is an insufficient ground upon which to disregard the corporate entity and impose liability for a corporate debt upon that shareholder. Appellant asserts that fraud, misrepresentation or other wrongdoing must be established before such liability can be imposed. Because the evidence offered below did not demonstrate fraud, misrepresentation or the like, appellant urges that the trial court erred in disregarding the corporate entity.

A corporation is a separate legal entity from its shareholders, even where there is but one shareholder. E.g., First Natl. Bank of Chicago v. Trebein Co. (1898), 59 Ohio St. 316, 52 N.E. 834; Suzzi, Inc. v. Atlantic Dept. Stores (1976), 49 Ohio App.2d 65, 68–69, 3 O.O.3d 125, 127–128, 359 N.E.2d 721, 724–725, fn. 1. Generally, in such situations, only the corporation can be held liable for corporate obligations. O'Neill v. United States (D.C.Ohio 1968), 281 F.Supp. 359, 93 O.O.2d 83, affirmed (C.A.6, 1969), 410 F.2d 888. Nevertheless, in certain circumstances, courts can "pierce the corporate veil,"

that is, disregard the corporate entity, and treat the shareholder and his corporation as a single entity. *E.S. Preston Assoc., Inc. v. Preston* (1986), 24 Ohio St.3d 7, 11, 24 OBR 5, 9–10, 492 N.E.2d 441, 445–446; *Suzzi, supra.* In such cases, the corporation is treated as the "alter ego" of the shareholder thereby rendering the shareholder liable for the obligations of the corporation. *Shury v. Rocco* (Mar. 30, 1989), Cuyahoga App. No. 56214, unreported, 1989 WL 30538. The leading case in the state of Ohio, *North v. Higbee Co.* (1936), 131 Ohio St. 507, 6 O.O. 166, 3 N.E.2d 391, cites with approval those cases which find the ownership of the stock of a corporation by one party as insufficient, in and of itself, to pierce the corporate veil. *Higbee, supra,* at 512–513, 6 O.O. at 168–169, 3 N.E.2d at 392–393. In addition, the *Higbee* court finds favor with statements which hold that the legal entity of the corporation cannot be disregarded unless it was used as a blind or instrumentality to defeat public convenience, justify a wrong or perpetuate a fraud. *Id.* In short, *Higbee, supra,* stands for the proposition that the corporate entity will be disregarded and the individual shareholder or parent corporation held liable only where there is proof that the corporation "was formed for the purpose of perpetuating a fraud, and that domination by the parent corporation [shareholder] over its subsidiary [corporation] was exercised in such manner as to defraud [a] complainant." *Id.* at the syllabus. This precept has been followed in later cases. See *Khoury v. Bd. of Liquor Control* (C.P. 1957), 74 Ohio Law Abs. 492, 141 N.E.2d 787; *Ohio Edison Co. v. Warner Coal Corp.* (1946), 79 Ohio App. 437, 35 O.O. 231, 72 N.E.2d 487; *Robinson v. A/L Equipment* (July 29, 1988), Washington App. No. 87–CA–29, unreported, 1988 WL 85082; *Union Enterprises, Inc. v. Garland* (Dec. 11, 1986), Franklin App. No. 86AP–612, unreported, 1986 WL 14252; *Westrick v. Fish Boat, Inc.* (May 22, 1981), Lucas App. No. L–80–245, unreported, 1981 WL 5603.

More recently, in *Bucyrus–Erie Co. v. Gen. Prod.* (C.A.6, 1981), 643 F.2d 413, the Sixth Circuit Court of Appeals held that the fiction of a corporate entity would be disregarded and the corporation considered the alter ego of the shareholder or officer only when three conditions were satisfied:

"(1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Id.* at 418.

See, also, *Miles v. Kohli & Kaliher Assoc., Ltd.* (C.A.6, 1990), 917 F.2d 235, at 254.

In discussing the element of fraud as a element for disregarding the corporate entity, the *Bucyrus–Erie Co.* court specifically held that the same is

not "essential." Rather, that court held that the corporate fiction would be disregarded "when its retention would produce injustice or inequitable consequences." *Id.* at 419. Although the Supreme Court of Ohio has not expressly addressed this issue, it appears to agree that the perpetuation of a fraud or illegality is not the sole ground for disregarding the corporate entity. In *E.S. Preston Assoc., Inc., supra,* 24 Ohio St.3d at 11, 24 OBR at 9, 492 N.E.2d at 446, the court held:

"Courts have been reluctant to disregard the corporate entity and have done so only where the corporation has been used as a cloak for fraud or illegality or where the sole owner has exercised such excessive control over the corporation that it no longer has a separate existence. *North v. Higbee Co.* (1936), 131 Ohio St. 507 [6 O.O. 166, 3 N.E.2d 391]. It has also been stated that the corporate entity should be disregarded only when justice cannot be served in any other way. *Auglaize Box Board Co. v. Hinton* (1919), 100 Ohio St. 505, 518–519 [126 N.E. 881, 885]."

This view was also expressed in Justice Brown's concurrence in *Thrift Fed. S. & L. Assn. v. Overton* (1990), 56 Ohio St.3d 48, at 52, 563 N.E.2d 289, at 293. See, also, *Saeks v. Saeks* (1985), 24 Ohio App.3d 67, 70, 24 OBR 122, 124–125, 493 N.E.2d 280, 282–283; *Suzzi, Inc.,. supra.* While at least one appellate court has expressly rejected any theory which would not encompass the perpetuation of a fraud as essential to disregarding the corporate veil, *Union Enterprises, Inc., supra,* and others still maintain that any domination over the corporation by officers or shareholders must be for fraudulent or wrongful purposes, *Robinson, supra,* other appellate courts in Ohio have disregarded the corporate entity in instances where there is evidence of harm, injustice, or fundamental unfairness. See, *e.g., Saeks, supra,* (finding that recognition of the corporate entity would be inequitable); *P.K. Lumber Co. v. Robbins* (Feb. 7, 1991), Montgomery App. No. 12355, unreported, 1991 WL 15966 (finding that under seven factors set forth by the appellate court the evidence supported the trial court's decision to impose liability on individual shareholders); *Money's Restaurant & Truck Plaza, Inc. v. Carrier Mgmt. Systems, Inc.* (Aug. 28, 1991), Hamilton App. No. C–900407, unreported, 1991 WL 169143 (applying *Bucyrus–Erie Co., supra* ); *Quality Interiors, Inc. v. Am. Mgmt. & Dev. Corp.* (Dec. 7, 1990), Medina App. No. 89–T–4303, unreported, 1990 WL 199248 (applying factors, *e.g.,* undercapitalization, etc.); *Lohr v. Sebald* (May 11, 1990), Portage App. No. 88–P–2034, unreported, 1990 WL 63023 (applying "alter ego" doctrine).

The Second Appellate District considers the following factors in determining whether to disregard the corporate entity and impose individual liability on the shareholder. These are: (1) grossly inadequate capitalization, (2) failure to

observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s). *P.K. Lumber Co., supra,* citing *Genuine Auto Parts v. Seidenschmidt* (Sept. 17, 1987), Montgomery App. No. 10179, unreported, 1987 WL 17106. *Bucyrus–Erie Co., supra,* 643 F.2d at 418–419, suggests the consideration of similar factors including undercapitalization, the observance of corporate formalities, any fraud, or the fact that the retention of the corporate fiction would lead to inquitable results. See, also, *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.* (C.A.6, 1988), 872 F.2d 702, 705 (undercapitalization, honoring corporate formalities, commingling of corporate and individual finances, maintenance of separate books, etc.); *Rice v. Oriental Fireworks, Co.* (1985), 75 Or.App. 627, 707 P.2d 1250 (undercapitalization, disregard of corporate roles and formalities); *Gallagher v. Reconco Builders, Inc.* (1980), 91 Ill.App.3d 999, 47 Ill.Dec. 555, 415 N.E.2d 560 (inadequate capitalization, failure to issue stock, failure to observe corporate formalities). See, generally, Annotation, Stockholders Personal Conduct of Operations or Management of Assets as Factor Justifying Disregard of Corporate Entity (1972 & Supp.1990), 46 A.L.R.3d 428. Although the Supreme Court of Ohio has not expressly overruled *Higbee, supra,* this court shall in recognition of *Bucyrus–Erie, supra,* and *E.S. Preston Assoc., Inc., supra,* review the evidence in this case under the standards set forth in these and other recent cases.

One of the purposes of incorporation is to limit the liability of individual shareholders. Section 3, Article XIII of the Ohio Constitution. Thus, the burden of proof is upon the party seeking to impose individual liability on the shareholder or shareholders for corporate debt to demonstrate that one of the grounds for piercing the corporate veil exists. *Miles, supra,* 917 F.2d at 255, citing *E.S. Preston Assoc., Inc., supra,* 24 Ohio St.3d at 11, 24 OBR at 9–10, 492 N.E.2d at 445–446. It is obvious from the record of this case that appellee neither alleged nor proved that Lan's was used as a "cloak for fraud or illegality." *E.S. Preston Assoc., Inc., supra.* Further, the record contains no evidence to suggest that appellant or the corporation engaged in any fraudulent or illegal conduct in entering into the repair contract with appellee. The trial court recognized this fact and based its decision solely upon facts which purportedly established that "Jimmy Ma and Lan's, Inc. were one in [*sic*] the same." In essence, the court below found that the evidence offered at trial demonstrated that the corporation was merely the alter ego of appellant and that maintaining the corporate fiction

would be inequitable or unjust. Our review is therefore limited to a determination of whether competent, credible evidence exists in the record of this case to support the trial court's finding. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

The trial court lists seven findings of fact in support of its judgment. Findings of Fact Nos. 1 and 4 have no relevance to consideration of the factors employed in determining whether a corporate entity is simply the alter ego of the shareholder. Finding of Fact No. 2 merely states that Lan's Restaurant (New China) was owned and operated by a corporation. Finding of Fact No. 7 recognizes that appellant never signed the contract for the repair work. Only Findings of Fact Nos. 3, 5 and 6 contain any facts which might have some relationship to and support the trial court's determination of the issue before it.

In Finding of Fact No. 3, the court states that appellant was president and sole shareholder of Lan's. The court also finds that the corporation was capitalized with $200. In Finding of Fact No. 5, the court below notes the fact that appellant made substantial loans to Lan's on those occasions when the corporation could not meet corporate obligations using funds generated by sales in New China. In Finding of Fact No. 5, the lower court also concludes "[I]t is clear from the evidence that Jimmy Ma did not distinguish or segregate his funds into personal and [*sic*] or personal or corporate accounts." Finding of Fact No. 6 indicates that the manager of New China was hired by Jimmy Ma and entered into the repair contract on behalf of the corporation "at the direction and instruction of Jimmy Ma."

Finding of Fact No. 3 may give rise to an inference that Lan's was undercapitalized but the court below never specifically found that the corporation was undercapitalized. Finding of Fact No. 5 supports the inference of undercapitalization. However, there is no evidence in the record of this case to support a finding that appellant did not distinguish his corporate and personal accounts. Appellee failed to offer any evidence as to corporate records or accounts. It is impossible to determine from appellant's testimony alone that there was a commingling of personal and corporate funds. As to Finding of Fact No. 6, appellant's testimony indicated that he acted only in his capacity as president of the corporation in overseeing the management of New China. As such, he had the authority to hire Dixon and to allow her to enter into the repair contract as an agent of the corporation. Thus, a review of the trial court's findings of fact reveals that the court's judgment is supported only by an inference that Lan's may have been undercapitalized. Nevertheless, we will assume that the lower court considered all of the factors relevant to disregarding the corporate veil and review the record of this case

to ascertain whether any evidence was offered by appellee on the pertinent factors.

The evidence offered below does give rise to a reasonable inference that appellant dominated and controlled the functioning of Lan's. However, dominance of and control over a corporation by a shareholder is insufficient, standing alone, to render the shareholder liable for corporate debts. *Gallagher, supra,* 91 Ill.App.3d at 1004–1006, 47 Ill.Dec. at 559, 415 N.E.2d at 564. There must be a showing relative to the other factors or considerations. In this case, appellant offered no proof that corporate formalities were not followed, that corporate records were not kept, that appellant commingled personal funds with corporate funds, or that appellant appropriated corporate funds or property for his own use. Basically, the court below had before it only the fact that New China failed as a business venture, the fact that appellant borrowed large sums of money to keep the restaurant in operation, the fact that appellant is president of Lan's and supervised management of New China and the questionable fact that the initial capital of the corporation was only $200. The inferences from these facts do not, under *Bucyrus–Erie, supra,* and *E.S. Preston, supra,* provide a sufficient basis to support a finding that Lan's was the alter ego of appellant.

Finally, while the facts presented below establish that New China was an unsuccessful business venture, many businesses do fail and third parties who contract with corporations owning such ventures find themselves in the position of creditors of an insolvent or bankrupt entity. That is what occurred in the case before us. From his testimony at trial, it is clear that Jones realized at some point during contract negotiations that DVJ's was dealing with a corporation. The terms of the repair contract itself should have alerted appellee to the fact that Lan's was possibly suffering financial setbacks. Therefore, even though DVJ's inability to collect on a contract for work performed may appear "unjust" or "inequitable," it is not the kind of inequity or injustice which merits the imposition of liability for a corporate debt on a shareholder. Instead, it is the type of happening which occurs in the business world, through no fault of the individual shareholder. Such a happening does not constitute injustice or inequity of the kind required to disregard the corporate entity. See, *e.g., Saeks, supra.* Liability cannot be imposed upon a shareholder simply because he invests in an unsuccessful venture. A consideration of the record in this case in its totality discloses no competent, credible evidence to support a judgment finding that appellant dominated the corporation to the point where it had no will of its own. Accordingly, the trial court's judgment was against the manifest weight of the evidence. Appellant's sole assignment of error is found well-taken.

On consideration whereof, this court finds that substantial justice was not done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to that court for entry of judgment against Lan's of Ohio, Inc. only.

*Judgment reversed*
*and cause remanded.*

GLASSER, MELVIN L. RESNICK, and SHERCK, JJ., concur.