DECISION AND JOURNAL ENTRY
Plaintiff-Appellant, Tandem Staffing, has appealed from a judgment of the Summit County Common Pleas Court that granted summary judgment to Defendant-Appellee, Dan Testa. This Court affirms.
 I.
Dan Testa ("Testa") was a shareholder of ABC Automation Packing Inc. ("ABC"). ABC was an Ohio corporation engaged in the business of packaging pool chlorination materials for shipping. Prior to its dissolution, ABC periodically contracted with, Tandem Staffing ("Tandem"), for temporary labor services.
On March 24, 1999, Tandem filed a complaint for breach of contract and civil conspiracy against ABC and its shareholders, Dan Testa and Ben Park. Tandem later amended its complaint to include a count for fraud. The shareholders moved the trial court to dismiss the complaint pursuant to Civ.R. 12(B)(6). On June 28, 1999, the trial court sua sponte coverted the motion to dismiss into a motion for summary judgment. The trial court granted summary judgment in favor of the shareholders on August 24, 1999. Shortly thereafter, Tandem obtained an order granting default judgment against ABC. Tandem timely appealed, asserting four assignments of error.[1]
 II. Assignment of Error Number One Whether the trial court abused its discretion when it sua sponte converted a motion to dismiss to a motion for summary judgment even though the motion to dismiss presented no matters outside of the pleadings.
 In its first assignment of error, Tandem has argued that it suffered prejudice when the trial court converted Testa's motion to dismiss into a motion for summary judgment. Specifically, Tandem has asserted that the trial court's actions prevented it from developing theories of recovery or substantiating them with discovery. This Court disagrees.
Although Tandem has asserted the above argument, it failed to raise the error in the trial court. The Ohio Supreme Court has held that any error, which arose during the course of a civil proceeding that was not brought to the trial court's attention by objection, or otherwise, is waived and may not be reviewed on appeal. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121. InGoldfuss, the Ohio Supreme Court stated that:
 In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.
Id. at syllabus. The record reveals that the trial court notified Tandem of the motion conversion and gave it additional time to file evidentiary material. Because Tandem did not object to the conversion and engaged in discovery, this Court concludes that this is not one of those extremely rare cases to which the plain error doctrine should apply. Accordingly, Tandem waived its objection, and its first assignment of error is overruled.
 III Assignment of Error Number Two Whether the trial court abused its discretion when it failed to allow [Tandem] a reasonable time for discovery after the court converted the motion to dismiss to a motion for summary judgment.
 In its second assignment of error, Tandem has asserted that the trial court abused its discretion by denying its request for a continuance.[2] Essentially, Tandem has argued that it did not have a reasonable opportunity to present all the materials necessary to oppose the motion for summary judgment. This Court disagrees.
Civ.R. 56(F) establishes the procedure for a party, who is opposing a motion for summary judgment, to seek a continuance and conduct further discovery:
 Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
 A party opposing a motion for summary judgment may have a ruling on the motion deferred until sufficient discovery may be had. See Tucker v. Webb Corp. (1983), 4 Ohio St.3d 121, 122-3. A party seeking a Civ.R. 56(F) continuance has the burden of stating a factual basis and reasons why the party cannot present sufficient documentary evidence without a continuance. Glimcher v. Reinhorn (1991), 68 Ohio App.3d 131, 138. The party must do more than assert a general request; it must demonstrate that a continuance is warranted. Id. Because the application of Civ.R. 56(F) is discretionary, a trial court's denial of such a motion shall not be reversed absent an abuse of discretion. Carlton v. Davisson (1995), 104 Ohio App.3d 636, 648. An abuse of discretion is more than an error of judgment, but instead demonstrates that the court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable. Id.
Tandem has asserted that based on Tucker, the trial court abused its discretion by depriving it of an opportunity to engage in substantial discovery. Despite Tandem's argument, this Court does not agree that Tucker stands for the proposition that, when a motion for summary judgment is filed early in the discovery process, a party opposing such motion has an automatic right to additional time. See, e.g., Russell v. Dreis and Krump Mfg. Co.
(Aug. 12, 1998), Wayne App. No. 97CA0067, unreported, at 3. On June 28, 1999, the trial court entered an order converting Testa's motion to dismiss into a motion for summary judgment. Approximately one month later on July 27, 1999, Tandem filed its first discovery request and moved the trial court to shorten the time for Testa's response. Nowhere in the motion did Tandem request a continuance. The trial court granted Tandem's motion and ordered that Testa should produce the documents by August 9, 1999. The order also extended Tandem's deadline for responding to the summary judgment motion until August 18, 1999. Tandem did not request a continuance until it filed its memorandum opposing summary judgment. Tandem attached an affidavit to its memorandum that stated additional time was necessary to obtain more financial records.
The case at bar is distinguishable from Tucker because Tandem has simply made general assertions requesting additional time to conduct more discovery on a related topic that was already the subject of its previous discovery request. Its initial request for production of documents had already asked Testa to provide all financial records for the years 1998 and 1999. Tandem's reason for extending discovery was that it believed that the data requested would support its claim for piercing the corporate veil. Tandem has also asserted in his brief that Testa did not supply it with all the requested documents; however, at no time did it file a motion to compel discovery. Further, Tandem neither gave the trial court a specific time frame for the completion of discovery nor presented a detailed assessment of what the search would reveal. In light of the foregoing, the trial court did not abuse its discretion when it denied Tandem's request for additional time. Tandem's second assignment of error is overruled.
 IV. Assignment of Error Number Three Whether the trial court erred in granting summary judgment in favor of [Testa] majority stockholder and officer of a closely held corporation when issues of fact existed as to whether [Testa] personally guaranteed payment of the debt owed (sic) [Tandem] or whether [Testa] could be personally liable under an alter ego theory of liability.
 Assignment of Error Number Four Whether the trial court erred in granting summary judgment against [Tandem] on [its] fraud and civil conspiracy claims when there were issues of fact as to whether [Testa] as an officer acted outside of the scope of his authority and therefore lost his immunity to suit for a civil conspiracy and further whether issues of fact existed as to whether [Testa] committed fraud against [Tandem].
 For ease of discussion, this Court will address both of Tandem's third and fourth assignments of error because they are interrelated. Essentially, Tandem has asserted that the trial court improperly granted Testa's motion for summary judgment because there exists genuine issues of material fact. This Court disagrees.
In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. In Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, the Ohio Supreme Court outlined the respective burdens upon the moving and nonmoving parties in the context of a motion for summary judgment pursuant to Civ.R. 56:
 [W]e hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under [Civ.R.] 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in [Civ.R.] 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in [Civ.R.] 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
 (Emphasis sic.) These principles were reaffirmed in Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-430.
Thus, unless the movant fulfills both prongs of the Dresher
duty, the motion for summary judgment must be denied. The moving party is required to state the basis for his motion and then point to "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any," that support the motion. Civ.R. 56(C). Merely alleging that a nonmoving party lacks evidence does not satisfy that obligation. Unless and until that burden is met, the nonmovant is under no corresponding duty, and the motion must be denied. "[A] movant's conclusory assertions of no evidence against the nonmovant [are] no longer good enough in Ohio." Am.Express Travel Related Serv. Co., Inc. v. Mandilakis (1996),111 Ohio App.3d 160, 164.
However, once the movant satisfies his burden, the nonmovant must then present or point out evidence that satisfies his reciprocal burden to demonstrate the existence of a material factual dispute. Pursuant to Civ.R. 56(E), a nonmovant "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the nonmovant fails to satisfy his reciprocal burden, summary judgment, if appropriate, should be granted. Civ.R. 56(E). This Court will analyze both parties' arguments and the evidence presented in support of those arguments to establish whether the respective burdens have been met.
 A. Piercing the Corporate Veil for Breach of Contract Claim
Generally, shareholders are not liable for the debts of the corporation. Belvedere Condominium Unit Owners' Assn. v. R.E.Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287. An exception exists where creditors of a corporation may "pierce the corporation's veil" and hold individual shareholders liable who use the corporate entity for fraudulent purposes. Id. The Ohio Supreme Court set forth the following three-part test to determine when to pierce a corporation's veil:
 [T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the Appellees from such control and wrong.
Id. at 289.
1. Testa's Burden for Control Element
Testa has argued that he was entitled to summary judgment because he is fundamentally distinguishable from ABC. He relied on the factors in LeRoux's Billyle Supper Club v. Ma (1991),77 Ohio App.3d 417, 422-423, to support his argument that he had a separate identity from ABC. Based on LeRoux's, the following factors are relevant in determining whether to disregard a corporate entity:
 (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).
Id. Although the factors that Tandem relied on are not exclusive nor binding, they may serve as a guideline in determining whether a corporation had no separate mind of its own.[3]
Testa has asserted that the facts in the case at bar are similar to those in LeRoux's. In LeRoux's, a creditor sought to hold a shareholder liable for a contractual debt of the restaurant. The shareholder had provided an initial investment of $200.00, acted as the corporation's president, supervised every aspect of management, and borrowed large sums of money from his other businesses to help keep the restaurant in operation. The facts in LeRoux's indicated that the restaurant struggled financially for its entire operation and the shareholder even admitted that he used some of his personal funds to pay the debts of the corporation. The shareholder also admitted that at the time the restaurant entered into the contract with plaintiff creditor, the corporate financial situation was bleak. Id. at 420. Based on the above facts, the court in LeRoux's concluded that the evidence did not give rise to a reasonable inference that the shareholder dominated and controlled the corporation. Id. at 425. Further, the court held that summary judgment was necessary because there was no proof that corporate formalities were not followed, that corporate records were not kept, that the shareholder commingled personal funds with corporate funds, or that the shareholder appropriated corporate funds or property for his own use. Id. at 425-6.
Testa relied on the facts in LeRoux's to support his argument that being the majority shareholder who contributed only $520.00, being the CEO of ABC, and personally lending the corporation money or loaning money from one of his other companies did not amount to the kind of control that was necessary to pierce the corporate veil. Testa pointed out that the evidence produced from discovery proved that he observed all corporate formalities and did not exercise wrongful control over the corporation. He also asserted that there was no evidence that he acted for his own personal benefit when dealing with ABC's assets. Testa and Ben Park stated in their affidavits that: (1) they followed the correct corporate procedures by holding meetings, maintaining records, and never held themselves out as being personally liable for ABC's debts; (2) any goods or services acquired on behalf of ABC were paid by ABC's corporate check from its corporate account; (3) neither of them used the corporate funds for their own benefit, and, (4) that ABC was wound up in an ordinary arms-length manner because of poor performance. Lastly, the affidavits indicated that Ben Park, not Testa, periodically arranged for services from Tandem.
After reviewing the record, this Court concludes that Testa satisfied his burden for the control element set forth inBelvedere, 67 Ohio St.3d at 289. Testa has supported his argument with the corporation's records and the factors set forth in LeRoux's. His affidavit, along with Ben Parks' affidavit, is consistent with the corporate records. Absent an adequate rebuttal by Tandem demonstrating a genuine issue of material fact, Testa was entitled to summary judgment on the claim for piercing the corporate veil.
2. Tandem's Burden for Control Element
In response to the motion for summary judgment, Tandem argued that ABC was undercapitalized. Tandem pointed to Testa's stock subscription agreement and the balance sheets for 1998-1999 of ABC to support his argument. Tandem also asserted that ABC was fundamentally indistinguishable from Testa because he was listed as an 83% owner of stock in ABC on the 1998 Schedule K form, only paid $520.00 for his shares of ABC, and loaned the corporation over $50,000 in cash. Lastly, Tandem pointed out that during the summer and fall months of 1998, its Vice President would go to Testa's other corporation, Testa Electric, to obtain payment. Based on the above evidence, Tandem argued that a material issue of fact existed as to whether Testa exercised dominion and control over ABC.
In construing all the facts presented, and all such facts being construed most strongly in favor of the non-moving party, this Court believes that reasonable minds could not differ concerning whether Testa exercised enough control over ABC to pierce the corporation's veil. Tandem merely produced evidence concerning Testa's stock ownership in ABC, that the company was in financial trouble and that Testa, along with another business he owned, personally loaned the corporation money. Although Tandem stated it would obtain payment at Testa Electric, there is no evidence that supports the theory that Testa commingled personal funds and did not observe all corporate formalities. As such, Tandem has failed to show that a genuine issue of fact existed. Having failed to rebutt Testa's evidence as to the first element of Belvedere, summary judgment was properly granted to Testa on the claim for piercing the corporate veil.
 B. Suretyship Argument for Breach of Contract Claim
"Suretyship is the contractual relation whereby one person, the surety, agrees to answer for the debt, default or miscarriage of another, the principal[.]" Solon Family Physicians, Inc. v.Buckles (1994), 96 Ohio App.3d 460, 463. The Ohio Supreme Court has held that "[a]n obligation in suretyship will not be implied and never arises by act of the parties except by express contract, yet the law will sometimes place a person, already bound upon some other contract, in the situation of surety by extending to him the privileges of this relationship." Gholson v. Savin (1941),137 Ohio St. 551, 557.
1. Testa's Burden
In support of his argument, Testa has asserted that Tandem failed to present any evidence that his son, David Testa, had actual or apparent authority to make representations to his personal liability.[4] Testa has relied on Petty v. FirstNatl. Bank (1976), 50 Ohio App.2d 365, to support his argument that Tandem has the burden of proving an agency relationship. Testa has argued that the record in this case is devoid of any evidence that his son acted as an agent for his personal business. He also stated in his affidavit that at all times he acted on behalf of ABC. Testa further pointed to an affidavit wherein Tandem's Vice President admitted that Testa had met with him to show business projections of ABC and promised that Tandem would get paid. Testa has asserted that the affidavit of Tandem's Vice President supports his claim that he acted on behalf of ABC and only made representations on behalf of the corporation. Lastly, Testa has referred to the suretyship provision in R.C.1335.05 to support his theory that even if there was an oral agreement, it would not be enforceable because there is no evidence in writing. R.C. 1335.05 provides, in part:
 No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt * * * of another * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.
 Testa has asserted that he could not have guaranteed payment of ABC's debts because there is no writing of any kind signed by him.
After reviewing the record, this Court concludes that Testa satisfied his Dresher burden for the suretyship claim. Testa demonstrated that there is no evidence in writing or facts that prove he was personally obligated to pay the debt of ABC. Absent an adequate rebuttal by Tandem demonstrating a genuine issue of material fact, Testa was entitled to summary judgment on the suretyship claim as a matter of law.
2. Tandem's Burden
Tandem responded to Testa's motion for summary judgment and also pointed to the affidavit of its Vice President which stated that Testa personally agreed to pay for the services provided to ABC. Tandem's Vice President stated in his affidavit that Testa's son acted as Testa's agent and promised that his father always paid his debts. The affidavit also mentioned that Testa was using his own money to pay Tandem in October of 1998 because Testa said he felt obligated. Based on the foregoing, Tandem asserted that issues of fact exist as to whether Testa entered into a contractual relationship with Tandem and agreed to pay the debt of ABC.
In construing all the facts presented, and all such facts being construed most strongly in favor of the non-moving party, this Court believes that reasonable minds could not differ concerning the suretyship claim. Even if Testa's son acted as an agent and if, at one point, Testa used money from his own account to pay ABC's debts, there is still no evidence in writing that fulfills the requirements of R.C. 1335.05. Having failed to rebut the suretyship claim, summary judgment was properly granted to Testa. Tandem's third assignment of error is overruled.
 C. Civil Conspiracy Claim
The Ohio Supreme Court has held that in order to establish a civil conspiracy claim, there must be an underlying unlawful act and "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." (Citations omitted.)Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475. The malice involved is the "state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." Pickle v. Swinehart (1960), 170 Ohio St. 441,443.
1. Testa's Burden
In his motion for summary judgment, Testa asserted that as an agent or employee of ABC, he could not have conspired with his employer. Testa relied on Scanlon v. Gordon F. Stofer Bro. Co.
(June 22, 1989), Cuyahoga App. Nos. 55467, 55472, unreported, 1989 Ohio App. LEXIS 2528, to support his theory that because he acted within the scope of his employment, it was legally impossible for him to have conspired with ABC to injure Tandem. In Scanlon, the Eighth District Court of Appeals held "that an officer or agent of a corporation is immune from suit for civil conspiracy only when acting within the course and scope of his corporate position."Id. at * 44.
In reviewing the case at bar, this Court concludes that Testa has satisfied his Dresher burden. He pointed to the corporate records and his affidavit as support that he acted within the scope of his authority. Absent an adequate rebuttal by Tandem demonstrating that Testa exceeding his authority, Testa was entitled to summary judgment on the civil conspiracy claim as a matter of law.
2. Tandem's Burden
In support of its theory that Testa acted outside the scope of authority, Tandem relied on the fact that it heard that ABC had been shut down because it was packaging hazardous chemicals without a permit. Tandem claimed Testa knew that ABC was operating without the permit and hired temporary workers from Tandem to further this illegal activity.
In construing all the facts presented, and all such facts being construed most strongly in favor of the non-moving party, this Court believes that reasonable minds could not differ concerning whether Testa was involved in a civil conspiracy. There is no genuine issue of material fact because Tandem did not point to any evidence in the record that showed Testa acted outside his authority to conspire with ABC. Accordingly, Testa was entitled to summary judgment as a matter of law.
 D. Fraud Claim
The Ohio Supreme Court defined fraud as:
 (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. (Citations omitted.)
Williams, 83 Ohio St.3d at 475. In order to establish a claim of fraud, it is necessary for the party to prove all of the above elements.
Testa argued that summary judgment was proper because Tandem has not come forward with any evidence to prove any specific misrepresentations. In his affidavit, Testa stated that at all times he acted on behalf of ABC and within the scope of his authority as an agent of the corporation. In response to Testa's arguments, Tandem pointed to the affidavit of its Vice President which stated that Testa had said that he was a man of his word and that he would pay what he owed to Tandem. Tandem argued that it relied upon the representations of Testa by providing temporary services for ABC. Tandem further asserted that it suffered damages because of Testa's fraudulent representations.
While construing these affidavits most strongly in Tandem's favor, this Court finds that there is no evidence that would justify a finding that Testa misrepresented a fact material to the agreement between ABC and Tandem. The statements in the affidavit of Tandem's Vice President were mere conclusions, with no specific facts to show that Testa knowingly made false representations with the intent to mislead Tandem. Therefore, the trial court was correct in granting summary judgment in Testa's favor on Tandem's claim of fraud. Tandem's fourth assignment of error is overruled.
 V.
Tandem's assignments of error are overruled. The judgment of the trial court granting summary judgment in favor of Testa is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
BAIRD, P.J., SLABY, J., CONCUR.
[1] This Court notes that Tandem has not appealed the trial court's order granting summary judgment in favor of shareholder Ben Park.
[2] Although the trial court did not expressly rule on Tandem's request for discovery, a presumption exists that when a court fails to rule on a pretrial motion, it was overruled. State exrel. The V Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469.
[3] This Court notes that Tandem has also relied on the same list of factors.
[4] This Court notes that Testa did not challenge the suretyship claim in his motion for summary judgment; however, he did respond to it on appeal.