JOURNAL ENTRY and OPINION
{¶ 1} Defendants-appellants James Thomas III, Industrial Quality Cleaning, Inc. and IQC, Inc. (collectively appellants) appeal from the trial court's decision in favor of plaintiff-appellee Ali Mohammadpour (Mohammadpour). Additionally, Mohammadpour cross-appeals from the trial court's finding that James Thomas III (Thomas) is not personally liable for the debts of Industrial Quality Cleaning, Inc. (Industrial) and IQC, Inc. (IQC). After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} Mohammadpour is a CPA who supplied accounting and bookkeeping services to appellants. Thomas is the chief shareholder and principal of both Industrial and IQC. Prior to the instant case, the IRS found Thomas and his original corporation, Industrial, delinquent in paying employee payroll taxes. The IRS recommended payment of the arrearage, closure of Industrial and the creation of a new replacement corporation to conduct business. Thus, Thomas incorporated IQC, which began operating with Industrial's equipment, employees and customer contracts.
 {¶ 3} On November 22, 2002, Mohammadpour filed a complaint against appellants for money owed him for accounting and bookkeeping services supplied from 1996 through 2002. Mohammadpour sought to hold Industrial liable for $41,295; IQC liable for the same $41,295 as the successor corporation to Industrial, plus an additional $3,633.75; and Thomas personally liable for both amounts.
 {¶ 4} On October 18, 2004, the trial court issued its judgment, finding the following: 1) Industrial, as the sole corporation in existence at the time, was liable for $41,295; 2) IQC, as the newly formed corporation, was liable for the latter billing amount of $3,633.75; 3) IQC, as the successor corporation to Industrial, was liable for the $41,295 that Mohammadpour invoiced to Industrial; and 4) Thomas was not personally liable for either debt as Mohammadpour did not establish sufficient evidence that Thomas was responsible for his corporations' debt to Mohammadpour.
 II. {¶ 5} In their first and only assignment of error, appellants argue that "the lower court erred [sic] finding that IQC, Inc. was a continuation of Industrial Quality Cleaning and therefore liable for the latter's accounting debt." Specifically, appellants argue the court erroneously found that 1) a de facto consolidation or merger took place between Industrial and IQC; and 2) IQC was liable to Mohammadpour for accounting services completed for Industrial.
 {¶ 6} Both parties, as well as the trial court, agree that the Ohio Supreme Court's Welco decision applies to the de facto consolidation or merger issue. Welco Industries, Inc. v. AppliedCompanies (1993), 67 Ohio St.3d 344. In Welco, the court held that "a corporation that purchases the assets of another corporation is not liable for the contractual liabilities of its predecessor corporation unless 1) the buyer expressly or impliedly agrees to assume such liability; 2) the transaction amounts to a de facto consolidation or merger; 3) the buyer corporation is merely a continuation of the seller corporation; or 4) the transaction is entered into fraudulently for the purpose of escaping liability."
 {¶ 7} The court's journal entry touches on the first, second and third prongs of the Welco test; however, the court specifically found that the evidence presented did not establish fraud, thus negating the fourth prong. Accordingly, we will review the trial court's findings that there was an implied agreement of liability; a de facto consolidation or merger of Industrial's business into IQC took place; and the successor corporation, IQC, was a mere continuation of Industrial. The essence of appellant's claim is that the trial court's ruling was against the manifest weight of the evidence. Accordingly, the standard of review in this case is limited, as "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279.
Implied agreement to assume liability
 {¶ 8} Mohammadpour put forth evidence that after IQC was formed, Thomas paid Mohammadpour 14 monthly installments on Industrial's debt to him, under the corporate name of IQC. Appellants, on the other hand, argue that they impliedly agreed the debts of Industrial would NOT be assumed by IQC. As support for their argument, appellants point to Mohammadpour's testimony that, once IQC was established, Industrial's personal property taxes would not be paid. However, appellants paint an incomplete picture, as Mohammadpour testified that Industrial was not going to be an entity at the time personal property taxes were due. Given this, the trial court's finding that Thomas impliedly agreed that IQC would assume liability for Industrial's debt to Mohammadpour is supported by competent, credible evidence.
De facto consolidation or merger
 {¶ 9} According to Welco, the "hallmarks of a de facto merger include 1) the continuation of the previous business activity and corporate personnel, 2) a continuity of shareholders resulting from a sale of assets in exchange for stock, 3) the immediate or rapid dissolution of the predecessor corporation, and 4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations." Welco, 67 Ohio St.3d 344,349.
 {¶ 10} In the instant case, the trial court found that IQC "took over, used and profited from [Industrial]'s business equipment, employees and contracts." Thus, IQC continued with the previous business activity and corporate personnel, satisfying the first element.
 {¶ 11} As to the second element, appellants argue that nosale of assets took place between Industrial and IQC; therefore, a de facto merger was impossible. However, the court found that IQC acquired Industrial's assets "for no apparent consideration" and the principal shareholder, Thomas, remained the same for both entities. Additionally, Mohammadpour testified that Industrial's contracts and equipment were transferred to IQC, and the only difference between the old Industrial and the new IQC was that taxes were filed in the name of the new corporation.
 {¶ 12} The third element requires corporate dissolution, and appellants argue that Industrial was not a dissolved corporation. However, the court found the following: "No evidence showed its franchise taxes continued to be paid or that it in fact conducted any business. The evidence established it was not dissolved because there was no reason to spend funds to do so." Additionally, one of the IRS mandates in wiping clean Industrial's payroll tax indebtedness was that Industrial cease doing business.
 {¶ 13} The final element evidencing a de facto consolidation or merger is the assumption of liability. As discussed earlier, it is undisputed that IQC made 14 payments to Mohammadpour in partial satisfaction of Industrial's debt. Accordingly, the trial court's finding that the evidence establishes a de facto consolidation or merger of Industrial's business into IQC is supported by competent, credible evidence in the record.
Mere continuation
 {¶ 14} The final theory upon which the trial court rested to impose successor corporation liability is mere continuation, which is the "continuation of the corporate entity, not the business operation, after the transaction." Welco,67 Ohio St.3d 344, 350. A classic example of a mere continuation is when "one corporation sells its assets to another corporation with the same people owning both corporations. Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation." Id. quoting Turner v. Bituminous CasualtyCo. (1976), 397 Mich. 406, 449. Additionally, the Welco court noted that inadequate consideration is one of the tokens of mere continuation. Welco, 67 Ohio St.3d 344, 350. The same facts detailed for the de facto merger analysis apply to the mere continuation theory. Furthermore, the trial court noted that because Thomas wanted to continue receiving the protection from personal liability that a corporate umbrella offers, the IRS suggested he switch the corporate form from Industrial to IQC. Thus, adequate, believable evidence exists to support the trial court's finding that IQC was a mere continuation of Industrial.
 {¶ 15} Finally, in appellants' reply brief, they argue that the instant case can be analogized to our ruling in AluminumLine Products Co. v. Brad Smith Roofing Co., Inc. (1996),109 Ohio App.3d 246. In Aluminum Line, we held that "[m]erely sharing the same physical plant, employees and continuing to market some products of SMI by ERA is not sufficient to establish liability under the mere-continuation theory." Id. at 266. However, Aluminum Line can easily be distinguished from the case at bar in that the two corporations in question in AluminumLine "were virtual strangers, albeit competitors, prior to the sale. * * * There is no evidence to support the conclusion that SMI transformed into ERA as a result of the same people owning or operating both corporations." Id. We also noted in AluminumLine that "none of SMI's shareholders became shareholders of ERA stock." Id. at 265. The instant case is an example of the opposite scenario. First, IQC did not exist prior to Industrial ceasing to do business — instead of being "virtual strangers," Industrial and IQC are more akin to siblings, created from the same parent. Second, Industrial's principal shareholder also became the principal shareholder of IQC.
 {¶ 16} In summary of appellants' assignment of error, we conclude the following: By applying the Welco factors and subfactors to the instant case, the trial court's ruling that IQC is liable to Mohammadpour for Industrial's accounting debt is not against the manifest weight of the evidence, and appellants' sole assignment of error is overruled.
 III. {¶ 17} In Mohammadpour's first and only cross-assignment of error, he argues that "the lower court erred[,] finding that Mr. Thomas was not personally liable for all or some of the Industrial Quality Cleaning, Inc. debt to appellee/cross appellant." Specifically, Mohammadpour argues that corporate liability can be imputed to Thomas under both the personal benefit/interest and piercing the corporate veil principles.
Personal benefit/interest
 {¶ 18} It is unclear how the personal benefit/interest and piercing the corporate veil theories differ, as applied to the instant case. Mohammadpour puts forth a legal test supported by Ohio case law in relation to piercing the corporate veil, yet cites no case law or statute, nor does he detail a test or standard, in relation to the personal benefit/interest principle. A careful review of Ohio jurisprudence reveals that the legal theories are interchangeable for the purpose of this appeal. See, e.g., Stuffleben v. Cowden, Cuyahoga App. No. 82537, 2003-Ohio-6344 (holding that "[a]n officer cannot manipulate the corporate entity to serve his/her own personal interests, i.e., hide behind the corporate entity * * *"); LeRoux's BillyleSupper Club v. Ma (1991), 77 Ohio App.3d 417, 420 (holding that a corporation and its shareholders are two separate legal entities and generally only the corporation is liable for corporate obligations; "[n]evertheless, in certain circumstances, courts can `pierce the corporate veil'"); First Natl. Bank ofChicago v. Trebein Co. (1898), 59 Ohio St. 316 (holding that equity will set aside situations when the fiction of a corporate entity is used as a shield to hide personal liability).
 {¶ 19} Given this, we will analyze Mohammadpour's argument under the piercing the corporate veil theory. Factually, Mohammadpour argues that Thomas benefitted personally from Mohammadpour's accounting services. As support for this argument, Mohammadpour claims that the IRS held Thomas personally liable for Industrial's payroll taxes, and part of Mohammadpour's services was related to this personal liability. Legally, a corporate veil may be pierced when the corporation is, at least in part, the alter ego of the shareholder. The Ohio Supreme Court set forth the test to determine when a shareholder becomes personally liable for the corporation's obligations in BelvedereCondominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993),67 Ohio St.3d 274, 289:
"[T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when 1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, 2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and 3) injury or unjust loss resulted to the plaintiff from such control and wrong."
 {¶ 20} In the instant case, the trial court found that Mohammadpour did not prove that he did any personal work for Thomas that was unrelated to Industrial's unpaid payroll taxes or the creation of the new corporation, because Mohammadpour's invoices "appear to be lumped together across all these services." In other words, the corporations do have a mind, will and existence of their own because all the work Mohammadpour performed was for the corporations. Once again, we review the court's rendering judgment in favor of Thomas on the personal liability issue under a manifest weight of the evidence standard. Mohammadpour argues that Thomas was the corporation, as Thomas was the only person Mohammadpour had contact with when performing accounting and bookkeeping services for Industrial and IQC. Mohammadpour also argues that when the IRS charged Industrial with civil tax penalties, Thomas was the only individual they charged personally. These facts are indicative of a closely held corporation, not necessarily of being able to pierce the corporate veil.
 {¶ 21} Accordingly, the trial court's finding that Thomas is not personally liable for Industrial, and therefore IQC's, debt is supported by competent, credible evidence in the record. Mohammadpour's cross-assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee/cross-appellant and appellants/cross-appellees share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and McMonagle, J., concur.