*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0090p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMES T. CORRIGAN, et al.,

    *Plaintiffs-Appellants,*

   *v.*

UNITED STATES STEEL CORPORATION; KOBE STEEL, LTD.,

    *Defendants-Appellees.*

No. 05-4625

Appeal from the United States District Court
for the Northern District of Ohio.
No. 03-01835—Kenneth S. McHargh, Magistrate Judge.

Argued: November 2, 2006

Decided and Filed: March 5, 2007

Before: RYAN, BATCHELDER, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Scott J. Orille, McINTYRE, KAHN & KRUSE CO., Cleveland, Ohio, for Appellants. Dianne Foley, SPIETH, BELL, McCURDY & NEWELL, Cleveland, Ohio, Thomas J. Lee, TAFT, STETTINIUS & HOLLISTER, Cleveland, Ohio, for Appellees. **ON BRIEF:** Scott J. Orille, McINTYRE, KAHN & KRUSE CO., Cleveland, Ohio, for Appellants. Dianne Foley, SPIETH, BELL, McCURDY & NEWELL, Cleveland, Ohio, Thomas J. Lee, Ronn J. Gehring, TAFT, STETTINIUS & HOLLISTER, Cleveland, Ohio, Michael P. Duff, UNITED STATES STEEL CORPORATION, Pittsburgh, Pennsylvania, for Appellees.

_____

## OPINION

_____

  RYAN, Circuit Judge. The plaintiffs, James T. Corrigan and William Watterson, are former nonunion steel industry employees. After the two men retired, they sued United States Steel Corp. (U.S. Steel) and Kobe Steel, Ltd., claiming entitlement to increased retirement benefits and damages for age discrimination. Neither defendant was ever the plaintiffs' direct employer. The district court granted summary judgment for the defendants, holding that on both claims—retirement benefits and age discrimination—the plaintiffs, to survive summary judgment, had to demonstrate that they were entitled to pierce the defendant corporations' corporate veils under Ohio law, and failed to do so.

1

We affirm the district court's application of Ohio state law piercing standards, rather than the federal law standards, and we agree that, as a matter of law, the plaintiffs have not made out a justiciable case showing the defendants' liability for the enhanced retirement benefits the plaintiffs claim. However, we also conclude that the district court erred in finding against the plaintiffs on their state law discrimination claim because the plaintiffs' veil piercing efforts failed. We hold, rather, that while the plaintiffs' age discrimination claim against U.S. Steel required no veil piercing, the claim fails because the plaintiffs have not shown that they are victims of unlawful age discrimination.

Accordingly, we affirm summary judgment in favor of the defendants.

## I.

In 1970, Corrigan and Watterson began working for USX Corporation, the corporate predecessor to defendant U.S. Steel, at its Lorain Works facility. As a term of their employment with USX, the plaintiffs were enrolled in a "30 and out" pension and retirement benefit plan, which allowed nonunion workers, like the plaintiffs, to retire with full pension benefits once they had completed 30 years of continuous service *with USX*. In May 1989, USX, Kobe Steel, USS Lorain Holding Company, and Kobe/Lorain, Inc., entered into an agreement forming USS/Kobe Steel Company (USS/Kobe) as an Ohio general partnership, the equal partners being USS Lorain and Kobe/Lorain. USS Lorain was a wholly owned subsidiary of USX. Kobe/Lorain was a wholly owned subsidiary of Kobe Delaware, Inc., which in turn was a wholly owned subsidiary of Kobe Steel USA Holding, Inc., which in turn was a wholly owned subsidiary of defendant Kobe Steel. Under the 1989 agreement, Lorain Works became a part of USS/Kobe, and the plaintiffs became employees of USS/Kobe. The USX "30 and out" benefit plan continued to recognize service and earnings with USS/Kobe for employees, such as the plaintiffs, who had worked for USX prior to June 30, 1989.

In 1999, Republic Technologies International Holdings, LLC (RTI), a new company in which Kobe Steel and USX each held only a minority interest, agreed to purchase part of the Lorain Works facility from USS/Kobe. At the same time, Lorain Tubular Company, LLC, a 50/50 joint venture between a Kobe Steel subsidiary and USX before merging into U.S. Steel in 2001, agreed to purchase the remaining part of the Lorain Works facility. Under the new 1999 Master Restructuring Agreement governing these transactions, the plaintiffs became employees of RTI. (This fact is critical.) USX agreed to continue to honor its employee benefit obligations and RTI assumed the employee benefit obligations of USS/Kobe. The plaintiffs also requested employment with Lorain Tubular, but they were not hired.

In August 1999, RTI, the plaintiffs' new employer, changed its retirement plans and froze all age, service, and earnings accrual plans as of September 30, 1999. However, USX, the plaintiffs' original employer, continued to offer the 30 year class pension. This meant that an employee who had 30 years of service with USX, USS/Kobe, and RTI combined, but only 19 years of service with USX, would be eligible for a 30 year class pension from USX, but the benefit would be paid only for the 19 years of service to USX. RTI, which assumed USS/Kobe's pension responsibilities, was responsible for the remainder of the 30 year pension, *i.e.*, 11 years of service. Watterson retired in 2000 and Corrigan retired in 2001. Each was awarded pension benefits based on 30 years of service, but U.S. Steel paid only for the 19 years of service at USX.

The plaintiffs filed suit in an Ohio court alleging claims of fraud, breach of contract, and promissory estoppel to recover additional benefits they believe they are owed under the 30 year pension plan, mainly the other 11 years of benefits. The plaintiffs also claimed USX discriminated against them on the basis of age when its subsidiary, Lorain Tubular, did not hire them. USX removed the case to federal district court, where summary judgment was granted for the defendants

on all claims.  The court held that the plaintiffs failed to show, under Ohio state law standards for piercing the corporate veil, that U.S. Steel, or USX, and Kobe Steel were not separate and distinct from USS/Kobe and RTI.  The plaintiffs appealed.

## II.

We review a summary judgment decision *de novo*, using the same standards considered by the district court.  *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2006).  Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment must be entered against the opposing party, however, if that party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which [it] will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In making these determinations, the court "'must view the factual evidence and draw all reasonable inferences in favor of the non-moving party.'"  *Thomas*, 453 F.3d at 660 (citation omitted).  A grant of summary judgment will be upheld only if the district court applied the proper law.  *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1015-16 (6th Cir. 1998).

## III.

Under the long-standing *Erie* doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located.  *Poe*, 143 F.3d at 1016 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).  When the success of a state law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil, this question of substantive law is governed by the law of the state in which the federal court sits.  *See, e.g.*, *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 604 (6th Cir. 2005).  In this case, all the claims brought by the plaintiffs—fraud, breach of contract, promissory estoppel, and age discrimination—are governed by state law.  Therefore, the district court, sitting in Ohio, properly applied the State of Ohio's piercing law.

In Employment Retirement Income Security Act (ERISA) cases, some courts, including this circuit, have applied a federal standard for piercing the corporate veil, *see, e.g.*, *Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 384 (6th Cir. 1991); *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 460 (7th Cir. 1991), but they have done so because the underlying ERISA claim is a federal law claim.  *See Lumpkin*, 933 F.2d at 460, and *Alman v. Danin*, 801 F.2d 1, 3-4 (1st Cir. 1986).  Since the plaintiffs brought only state law claims, cases applying a federal veil-piercing standard do not apply.  Under the *Erie* doctrine, the district court correctly applied the Ohio standard.

## IV.

The plaintiffs brought their claims of fraud, breach of contract, and promissory estoppel against U.S. Steel and Kobe Steel, even though neither of these companies was their direct employer when the alleged misdeeds took place.  Rather, during the relevant time period, the plaintiffs worked for USS/Kobe and RTI.  The plaintiffs' fraud claim is directed at statements made by the president of USS/Kobe and the breach of contract claim is based on benefit provisions that bound only USS/Kobe and RTI, not defendants U.S. Steel and Kobe Steel.  Therefore, in order to hold U.S. Steel and Kobe Steel liable for the actions of USS/Kobe and RTI, the plaintiffs must pierce the corporate veil between these companies.

A parent corporation generally is not liable for the acts of its subsidiary, even if its subsidiary is wholly owned.  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *LeRoux's Billyle Supper Club*

*v. Ma*, 602 N.E.2d 685, 687-88 (Ohio Ct. App. 1991). However, in extraordinary cases, such as the corporate form being used for wrongful purposes, courts will pierce the corporate veil and disregard the corporate entity, treating the parent corporation and its subsidiary as a single entity. *Bestfoods,* 524 U.S. at 62. In such cases, the subsidiary corporation is treated as the "alter ego" of the parent corporation shareholder and the parent corporation may be held liable for the obligations of the subsidiary. *LeRoux's Billyle*, 602 N.E.2d at 688. The burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability on the parent corporation. *Id.* at 689.

Under Ohio law, a court will pierce the corporate veil if a plaintiff shows: (1) the parent's control over the subsidiary was "so complete" that the subsidiary had "no separate mind, will, or existence of its own"; (2) the parent's exercise of control over the subsidiary amounted to "fraud or an illegal act" against the plaintiff; and (3) "injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.*, 617 N.E.2d 1075, 1077 (Ohio 1993); *see also Carter- Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 748 (6th Cir. 2001). To determine whether the first prong of this test has been satisfied, Ohio courts often consider a variety of factors: (a) grossly inadequate capitalization; (b) failure to observe corporate formalities; (c) insolvency of the debtor corporation at the time the debt was incurred; (d) the parent holding itself out as personally liable for certain subsidiary obligations; (e) diversion of funds or other property of the subsidiary for the parent's use; (f) the absence of corporate records; and (g) the fact that the subsidiary was a mere facade for the operations of the parent. *LeRoux's Billyle*, 602 N.E.2d at 689.

While these factors are helpful in deciding the first prong—the extent of the parent's control over the subsidiary—a court should focus on principles of equity and whether the relationship is so dominating that respecting it would be unjust. *See Danziger v. Luse*, 815 N.E.2d 658, 662, 667 (Ohio 2004); *State ex rel. Petro v. Mercomp, Inc.*, 853 N.E.2d 1193, 1198 (Ohio Ct. App. 2006). "[A] plaintiff must show that the individual and the corporation are fundamentally indistinguishable." *Belvedere*, 617 N.E.2d at 1086. In *Danziger*, the court found facts of some overlapping management, but determined the evidence was insufficient to show the requisite "complete control" of the subsidiary by the parent. 815 N.E.2d at 667. Specifically, the court pointed to: "separate meetings, separate record keeping, separate shareholder meetings, different assets owned and held by each corporation, different income streams, and the purely passive income [of the shareholder]." *Id.* at 668.

In this case, in order to pierce the corporate veils that separate U.S. Steel and Kobe Steel from USS/Kobe and RTI, the plaintiffs must pierce a succession of corporate veils. USS/Kobe was a general partnership with the equal partners being USS Lorain and Kobe/Lorain. Being general partners, USS Lorain and Kobe/Lorain would be liable for USS/Kobe's debts. Therefore, in order to reach the assets of USX and Kobe Steel, the plaintiffs must show that the court should pierce the corporate veils between USX and USS Lorain and between Kobe Steel, Kobe Delaware, Inc., Kobe Steel USA Holding, Inc., and Kobe/Lorain. The plaintiffs also must pierce the corporate veil between USX and Kobe Steel and RTI. Since RTI was not a subsidiary of USX or Kobe Steel, the plaintiffs would have to succeed with their argument that RTI assumed the retirement benefit liabilities of USS/Kobe, and then pierce the veil between USS/Kobe and USX and Kobe Steel. Thus, all of the plaintiffs' claims depend on piercing the veils between USS/Kobe and USX and Kobe Steel.

The plaintiffs try to satisfy the first prong of the Ohio veil piercing test—"complete control" of the subsidiary by the parent—by arguing that USS/Kobe was the alter ego of both USX and Kobe Steel because both the USX and Kobe Steel subsidiaries involved with USS/Kobe were formed within one month of the creation of USS/Kobe; both USX and Kobe Steel were named to the USS/Kobe partnership agreement and the 1999 Master Restructuring Agreement; and Kobe Steel

directly entered into agreements governing the operation of the Lorain Works facility. In addition, the plaintiffs argue that while USS/Kobe had separate officers from its parent companies, they were not independently employed, many employees were shared between the companies, and USX and Kobe Steel controlled the companies.

These arguments, both individually and taken together, fail to show that RTI or USS/Kobe and Kobe Steel or USX were "fundamentally indistinguishable," *Belvedere*, 617 N.E.2d at 1086, and thus fail the first prong of Ohio's veil piercing test. While the plaintiffs claim that Kobe Steel and USX directly controlled USS/Kobe because they created the partner subsidiaries so close in time to the creation of USS/Kobe, they have presented no evidence of this control and companies are not required to wait a length of time to utilize the limited liability benefits of the parent-subsidiary corporate form. Furthermore, the plaintiffs' argument has even less force for Kobe Steel since the plaintiffs have not even attempted to show that the court should pierce the corporate veil between all the subsidiaries of Kobe Steel. Kobe Steel was separated from Kobe Lorain by two other subsidiaries and the plaintiffs have not presented any evidence showing why the corporate form should be disregarded as to each of these levels of subsidiaries. Since parent corporations generally are not held liable for the acts of even wholly owned subsidiaries, *LeRoux's Billyle*, 602 N.E.2d at 687-88, the plaintiffs' first argument fails.

The plaintiffs' arguments regarding USX's and Kobe Steel's involvement in running USS/Kobe are similarly unpersuasive. The plaintiffs must show that USX's and Kobe Steel's control of their subsidiaries was "so complete" that the subsidiary had "no separate mind, will, or existence of its own," under the first prong of the piercing test. *Belvedere*, 617 N.E.2d at 1077. While Kobe Steel and USX were parties to the USS/Kobe formation agreement and 1999 Master Restructuring Agreement and Kobe Steel entered a few other agreements on behalf of Kobe Lorain, the plaintiffs have not presented evidence demonstrating that these were not isolated incidents of control by USX and Kobe Steel. These incidents do not show that USX or Kobe Steel had taken over the day-to-day operations of USS/Kobe or that USS/Kobe lacked control over its own operations.

Similarly, the plaintiffs' claim that USS/Kobe shared officers and employees with USX and Kobe Steel does not give us a reason to pierce the corporate veils separating the corporations. The plaintiffs mainly rely on testimony from USS/Kobe's president to support their claim that USS/Kobe's management committee was comprised of USX and Kobe Steel employees. However, the USS/Kobe president also testified that USS/Kobe's management committee did not handle the day-to-day operations of USS/Kobe. The plaintiffs offer no evidence to disprove this testimony or to show that USX and Kobe Steel employees controlled USS/Kobe. Furthermore, even taking the plaintiffs' claim as accurate, proof of some overlapping management between subsidiary and parent is an insufficient basis to pierce the corporate veil. *Danziger*, 815 N.E.2d at 668; *Bestfoods*, 524 U.S. at 62.

The plaintiffs have neither alleged nor shown a number of other factors Ohio courts have found material to justify veil piercing: (a) grossly inadequate capitalization; (b) failure to observe corporate formalities; (c) insolvency of the debtor corporation at the time the debt was incurred; (d) the parent holding itself out as personally liable for certain subsidiary obligations; (e) diversion of funds or other property of the subsidiary for the parent's use; (f) the absence of corporate records; and (g) the fact that the subsidiary was a mere facade for the operations of the parent. *LeRoux's Billyle*, 602 N.E.2d at 689. The plaintiffs allege only (g) and their conclusory claims fall short because the evidence does not show that USS/Kobe has been dominated and controlled by U.S. Steel or Kobe Steel.

The plaintiffs have failed to satisfy the first prong of the Ohio piercing test and so no analysis of the other two prongs is necessary. The district court properly found that the plaintiffs could not

pierce the corporate veil and properly granted summary judgment in favor of the defendants on the plaintiffs' claims of fraud, breach of contract, and promissory estoppel.

## V.

We turn now to the plaintiffs' age discrimination claim. The plaintiffs claim that they were discriminated against because of their age when they applied for positions with Lorain Tubular in 1999. They might have brought age discrimination claims directly against Lorain Tubular; however, Lorain Tubular merged into U.S. Steel in 2001 and ceased to exist. While generally purchasers of a corporation's assets are not liable for the debts and obligations of the seller corporation, one clear exception is where "the transaction amounts to a de facto consolidation or merger," which we will assume was the legal effect of the U.S. Steel takeover of Lorain Tubular. *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1130-31 (Ohio 1993). U.S. Steel assumed the rights and obligations of Lorain Tubular when it took over the company. We will treat the plaintiffs' age discrimination claim as a direct claim against U.S. Steel, which does not require piercing the corporate veil between U.S. Steel and Lorain Tubular as the district court mistakenly concluded.

Ordinarily, we would remand to the district court to decide whether U.S. Steel is entitled to summary judgment on the plaintiffs' age discrimination claim. However, the parties agree that there are no material facts at issue for this claim, and so we will decide the claim ourselves instead of sending the issue back to the district court. We find that the plaintiffs have failed to allege an adequate claim of age discrimination and affirm the summary judgment in favor of U.S. Steel.

Ohio courts generally decide state law age discrimination claims under federal law interpreting Title VII. *Bucher v. Sibcy Cline, Inc.*, 738 N.E.2d 435, 442 (Ohio Ct. App. 2000). A Title VII-type analysis involves determining whether a plaintiff has made a *prima facie* case under the *McDonnell Douglas* formula. *Mauzy v. Kelly Servs., Inc.*, 664 N.E.2d 1272, 1276 (Ohio 1996); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Where there is no direct evidence of discrimination, *McDonnell Douglas* calls for a burden-shifting regime, *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1115 (6th Cir. 2001), under which a plaintiff has the initial burden of demonstrating that: (1) he was a member of the statutorily protected class; (2) he suffered an adverse employment decision; (3) he was qualified for the job; and (4) he was rejected in favor of a person not belonging to the protected class. *Mittman v. Bahls*, 772 N.E.2d 181, 189-90 (Ohio Ct. App. 2002) (citing *Barker v. Scovill, Inc.*, 451 N.E.2d 807, 808 (1983), *holding modified on other grounds* by *Kohmescher v. Kroger Co.*, 575 N.E.2d 439 (Ohio 1991)). The protected class includes all workers 40 years old or older. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). The last prong, (4), "require[s] replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Id.* "Significantly younger" has been interpreted to mean someone 8 years younger or more. *Id.* at 340.

The plaintiffs applied for a number of positions with Lorain Tubular in August 1999. The first group of jobs the plaintiffs sought came into existence because the Lorain facility split up its operations. The result was a number of openings at Lorain Tubular including: department manager for maintenance and engineering; electrical engineering and high voltage maintenance manager; mechanical engineering and environmental manager; three shift managers of maintenance services; tubular information systems manager; and shift manager #3 for seamless finishing. The plaintiffs have met the requirements of the first two prongs of a *prima facie* case of age discrimination because both were more than 40 years old when they applied and lost benefits when they were not hired for the positions. However, neither plaintiff offers any evidence for his qualification for these jobs and most of the evidence in the record is to the contrary. The plaintiffs admitted at deposition that for many of these positions they were either not qualified, needed significant training, or that the person hired was much more qualified. Even assuming they were qualified, the plaintiffs do not point to any evidence that they were replaced by "significantly younger" people, and indeed once again the

evidence that does exist is to the contrary. The positions of the three shift managers, the shift manager #3 for seamless finishing, and the tubular information systems manager were filled by qualified employees above the age of 40.

The second group of jobs the plaintiffs applied for were two openings as a #4 seamless operations manager. The plaintiffs present some argument to support a *prima facie* case for these two positions, but still fall short. Once again the plaintiffs satisfy the first two prongs of their *prima facie* case because both the plaintiffs were more than 40 years old when they applied and lost benefits when they were not hired for the positions. They also presented some evidence in the form of deposition testimony supporting their qualifications for these positions, and arguably satisfy the third prong. But they fail to establish the fourth prong of a *prima facie* case for one of the two positions because that position was filled by a person the plaintiffs admit was over age 40. But the other position was filled by a person significantly under the age of 40, and so we will assume that the plaintiffs made out their *prima facie* case for this one position.

Once a plaintiff establishes a *prima facie* case and raises a presumption of discrimination, the burden shifts to the defendant to show that the defendant acted for a legitimate nondiscriminatory reason. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994). Once the defendant presents these reasons, the burden of proceeding shifts back to the plaintiff who now has the burden of proving that the employers' proffered nondiscriminatory reasons are pretextual. *Burdine*, 450 U.S. at 255-56. To show pretext, a plaintiff must prove by a preponderance of the evidence that the employer's proffered reasons: (a) had no basis in fact; (b) did not actually motivate the non-hiring; *or* (c) were insufficient to motivate the refusal to hire. *Manzer*, 29 F.3d at 1084.

Here, as to the position in question, defendant U.S. Steel argues that Lorain Tubular hired the younger Chris Knight rather than the plaintiffs because Knight had better qualifications. According to the deposition testimony of the U.S. Steel manager of employee relations, Knight had previous supervisory operations management experience in manufacturing and a degree in operations management. This nondiscriminatory explanation shifts the burden to the plaintiffs to prove this reason is a pretext. In response, the plaintiffs offer only conclusory statements that this reason is a pretext and do not support their claims with evidence showing that the defendant U.S. Steel's nondiscriminatory reason had no basis in fact, did not motivate the employment decision, or were insufficient to motivate the employment decision. *Id.* Consequently, the plaintiffs have failed to meet their burden and have not shown age discrimination for this position.

The plaintiffs cannot satisfy their *McDonnell Douglas* burdens for any position with Lorain Tubular and, therefore, fail in their age discrimination claims.

## VI.

Because the plaintiffs cannot pierce the corporate veil and did not present adequate evidence to support age discrimination claims, the district court's summary judgment in favor of defendants U.S. Steel and Kobe Steel is **AFFIRMED**.