NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0178n.06

No. 09-5213

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

PATRICIA SPECK, )
)
    Plaintiff-Appellant, )
)
v. )  ON APPEAL FROM THE UNITED
)  STATES DISTRICT COURT FOR
CITY OF MEMPHIS, )  THE WESTERN DISTRICT OF
)  TENNESSEE
    Defendant-Appellee. )
)
)
)

**FILED
Mar 22, 2010
LEONARD GREEN, Clerk**

Before: MOORE and KETHLEDGE, Circuit Judges; and BERTELSMAN, District Judge.[*]

KETHLEDGE, Circuit Judge. Patricia Speck appeals the district court's grant of summary judgment in favor of the City of Memphis on Speck's claims of age discrimination. We affirm.

I.

Speck worked as Coordinator of Nursing Services at the Memphis Sexual Assault Resource Center (MSARC) starting in 1989. She alleges that her managers accused her of violating city policy, unfairly criticized her work performance, failed to intervene in co-worker harassment, and otherwise interfered with her ability to work. Speck says that she complained about this treatment but that the situation never improved.

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

The conflict escalated when, in July 2004, Speck took leave from work under the Family and Medical Leave Act (FMLA) due to a heart condition that she says was caused by the incidents at work. Initially Speck's doctor restricted her to two days per week of work for three to four months. Speck continued to work more than 16 hours per week, however, because MSARC manager Julie Coffey told Speck "there will be a consequence" if she failed to ensure that all open nursing shifts were covered. During this time Speck also requested vacation time to attend an International Association of Forensic Nurses (IAFN) conference in Chicago at which, as President of the association, she had a number of duties. Coffey denied the request. Apparently another nurse, Rachel Copeland—who was under 40 years old—was allowed to travel to an IAFN conference, although the record is unclear whether this was the same conference or a later one. Unlike Speck, however, Copeland was not on medical leave when she made her request to attend the conference.

Speck says her heart condition then worsened, which she attributes to the stress these management actions caused. Although Speck was scheduled to return to full duty in October 2004, her doctor instead designated her as unable to work at all and placed her on continuous FLMA leave. Accordingly, Speck did not return to work. While on full medical leave, Speck traveled to the Chicago IAFN conference—the same conference for which the City had denied Speck's vacation-time request. City policy required employees on medical leave to inform their supervisors of their "convalescent location"—defined as "the employee's residence or other location approved by the

employee's designated supervisor."   The City found that Speck had violated that policy because she did not obtain advance permission to change her convalescent location and travel to Chicago.

On May 23, 2005, Speck informed a supervisor, Michael Gray, that she would travel again for a wedding and another nursing conference.  Gray told Speck that prior approval was necessary and that he would deny any such request.  He also warned her that the City might terminate her if she violated the sick-leave policy again.  Speck resigned two days later.

After Speck's resignation, the City temporarily hired Copeland to fill her position.  Speck says that she did not believe her treatment was age-related until she found out that Copeland had replaced her.

Speck filed a discrimination charge with the EEOC, which issued a right-to-sue letter.  Speck later filed this suit, alleging that the City had subjected her to a hostile-work environment, forced her to resign, and retaliated against her for complaining about her supervisors' conduct, all in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*.  The City moved for summary judgment on her claims, which the district court granted.  This appeal followed.

II.

We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

To assert a claim of age discrimination under the ADEA, a plaintiff must produce evidence that the employer's actions were because of age. *See* 29 U.S.C. § 623(a)(1). To assert a retaliation claim, a plaintiff must also show that she complained about age-based discrimination. *See* 29 U.S.C. § 623(d). Although for each claim the district court focused its inquiry on Speck's prima facie case, we may affirm on any ground supported in the record. *See Ley v. Visteon Corp.*, 543 F.3d 801, 805-06 (6th Cir. 2008).

Speck first claims that the City constructively discharged her by creating intolerable working conditions. Because Speck offers only circumstantial evidence to support this claim, we apply the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009). Under that framework, if the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce a legitimate, non-discriminatory explanation for its decision. *McDonnell Douglas*, 411 U.S. at 802-05. If the defendant produces such an explanation, the plaintiff then has the burden to show that the explanation is a pretext. *Id.* To establish pretext, a plaintiff must show the stated reason (a) had no basis in fact, (b) was not the actual reason, or (c) was insufficient to explain the employer's actions. *Corrigan v. United States Steel Corp.*, 478 F.3d 718, 728 (2007). Essentially, the plaintiff must show that the employer's "'business decision' was so lacking in merit as to call into question its genuineness." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (quoting *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988)).

We need not decide whether Speck made out a prima facie case because she has not, in any event, produced evidence that the City's reasons for its actions were pretextual. The only adverse

action taken by the City within the 300-day EEOC filing period—and thus the only one we may consider for this claim—was its May 23, 2005 denial of Speck's travel request. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001) (holding that in a state with its own employment-discrimination laws, like Tennessee, a plaintiff must file a complaint with the EEOC within 300 days of an alleged discriminatory act). The City explained that it denied the travel request based on its policy that she remain at her convalescent location unless granted prior permission to travel. Speck has not produced evidence to show that this reason was pretextual. That a younger worker was hired after Speck resigned is not alone sufficient to show that applying city policy was not the actual reason for denying the request. *See Chappell v. GTE Products Corp.*, 803 F.2d 261, 267 (6th Cir. 1986). Nor does the fact that the City allowed Copeland, but not Speck, to travel to an IAFN conference show pretext. Speck and Copeland were not similarly situated in at least one key respect: Speck was on sick leave, while Copeland was not. *Cf. Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (holding that a plaintiff making a prima facie discrimination case must show she was similarly situated in all relevant aspects).

Although Speck cites no legal authority on the statute-of-limitations issue, her arguments rely on a number of incidents dating back to 2002, not just those within the 300-day limitation period. Speck therefore implies that we should analogize a constructive-discharge claim to a hostile work-environment one, where the pattern of harassment constitutes a single act for filing-deadline purposes. *Cf. Morgan*, 536 U.S. at 110. We need not decide this question either, because

considering even Speck's full history with the City, the record lacks evidence of pretext. For each action the City took, it cited a city policy or a facially legitimate business reason. And for each incident, Speck has not produced evidence creating a genuine issue as to whether the reasons the City proffered were pretextual. *See Corrigan*, 478 F.3d at 728.

We should add that much of the City's conduct towards Speck appears regrettable. Based on Speck's side of the story, at least, her managers appear to have been rather harsh in their enforcement of the City's policies. But the statute proscribes age discrimination, not harsh enforcement of policies that themselves do not discriminate based on age. Speck lacks evidence of the former. Her claim therefore fails.

Speck next claims that her supervisors' actions created a hostile work environment for her. For purposes of hostile work-environment claims, repeated harassment constitutes a single act of discrimination. *Morgan*, 536 U.S. at 115-18. A court may therefore consider all related acts so long as one incident falls within the 300-day filing period. *Id.* But this claim too requires a plaintiff to show that the harassment was "based on age[.]" *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996). Speck does not have evidence creating a genuine issue that she was harassed based upon her age.

Finally, Speck presents a retaliation claim. She alleges that, in retaliation for her complaints about her treatment, her supervisors created conditions that forced her to resign. But a plaintiff claiming retaliation must show, among other things, that she engaged in activity protected under anti-discrimination law. *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) ("In order to receive protection under the ADEA, a plaintiff's expression of opposition must concern a violation

of the ADEA"). Thus, Speck "must have referenced alleged acts of *age discrimination*" by the City to maintain her retaliation claim. *See id*. (emphasis added). Speck produced no evidence that she ever mentioned age discrimination in any of her complaints before resigning. She complained about being targeted for unfair treatment, but not about being targeted because of her age. This claim therefore fails as well.

The judgment of the district court is affirmed.

**KAREN NELSON MOORE, dissenting in part and dissenting in judgment.** I disagree

with the majority's resolution of Patricia Speck's constructive-discharge and hostile-work-

environment claims. Because the majority improperly limits its consideration of Speck's probative

evidence and because triable issues remain with regard to both claims, I would reverse the summary

judgment of the district court and remand for further proceedings.

In analyzing Speck's claim of constructive discharge, the majority mistakenly restricts its

analysis of whether Speck suffered an adverse employment action to the City's denial of Speck's

request to change her convalescence location. In the case of a constructive discharge, however, "the

actionable conduct is not a discrete, identifiable act" that occurs prior to an employee's resignation,

such as the City's denial of Speck's request, but instead the actionable wrong is that an employer has

"intentionally create[d] an intolerable work atmosphere that forces an employee to quit

involuntarily." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000); *see also Draper v.

Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998); *Chapman v. Carmike Cinemas*, 307 F.

App'x 164, 174 (10th Cir. 2009) (unpublished opinion).

Speck's constructive discharge occurred when she resigned on May 27, 2005, which is the

date that her cause of action accrued. *Mayo v. Kenwood Country Club, Inc.*, No. 97-4007, 1998 WL

863624, at *2 (6th Cir. Nov. 23, 1998) (unpublished opinion); *accord Flaherty*, 235 F.3d at 138–39

(citing *Draper*, 147 F.3d at 1110). Although acts or events occurring outside the 300-day statute of

limitations are not themselves separately actionable, we must consider those events when

determining if the last actionable conduct—the alleged constructive discharge—was the product of

discriminatory behavior. *Cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Nor

does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."); *Wells v. New Cherokee Corp.*, 58 F.3d 233, 236 (6th Cir. 1995) (noting that the plaintiff "may offer" a defendant's time-barred "conduct as evidence of its motivation for eventually firing" the plaintiff). As aptly stated by another panel of this court, a plaintiff may prove a "claim of constructive discharge with evidence of events occurring prior to" the statute of limitations cut off because "[s]tatutes of limitations apply to claims, not the evidence supporting the claims." *Boggs v. Kentucky*, No. 95-6452, 1996 WL 673492, at *2 (6th Cir. Nov. 20, 1996) (unpublished opinion) (citing *Black Law Enforcement Officers Ass'n v. City of Akron*, 824 F.2d 475, 482–83 (6th Cir. 1987)). The majority misconstrues the denial of Speck's request to change her convalescence location as the sum of Speck's constructive-discharge claim. That action, however, was only one of many facts that Speck argues forced her to resign, and it is her ultimate resignation that forms the basis of Speck's claim.

Considering the totality of Speck's circumstantial evidence and viewing the facts in the light most favorable to Speck, I believe that Speck has raised triable issues regarding whether she was constructively discharged. Although the City attempts to justify its treatment of Speck leading up to her resignation as the product of legitimate and non-discriminatory exercises of its disciplinary and policy-enforcement powers, I believe that Speck has presented sufficient evidence to allow a jury to reject the City's explanations as pretextual and to conclude that the real reason for the City's actions was a discriminatory one. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008); *Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001). Although the mere replacement of Speck with a younger worker is not sufficient alone to establish pretext, Speck was

replaced with a younger woman whom Speck had recruited and trained, a fact from which a jury could reasonably conclude that the City was not concerned with Speck's methodology or work but instead that the City possessed an "out with the old, in with the new" mentality. There is also evidence that the City attempted to hide the fact that Speck's younger former student was, in fact, Speck's replacement. Because the City feared that "there may be a lawsuit," it expressly forbade Speck's replacement from using a job title that revealed that she had assumed Speck's responsibilities. Dist. Ct. Docket ("Doc") 73-7 ( Pl. Resp. Mot. Summ. J. at 14). Viewed in the light most favorable to Speck, a jury could conclude from this evidence that the City's actions were for an illegitimate, age-based reason.

The pretextual nature of the City's actions is also reflected by the fact that the justification for the City's denial of Speck's request to change her convalescence location—the act that immediately preceded her resignation and the action upon which the majority relies—as well as the reasons behind the other disciplinary actions the City took against Speck are "so lacking in merit as to call into question [their] genuineness." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (internal quotation marks omitted). Specifically focusing on Speck's request to change her convalescence location, as the majority does, the record indicates that Speck timely submitted the request in accordance with City policy, and the City was aware that Speck's physician had not restricted her travel. The City denied the request, but it provided no justification other than the fact that Speck had failed to show "that the proposed convalescent locations [we]re medically necessary and directly related to [her] Medical condition." Doc. 66-23 (Def. Mot. Summ. J.). Notably, however, the City did not reference any City policy that required Speck to establish such a fact, and the policy the City

did reference contains no such requirement. Granting Speck's request would have cost the City nothing. Speck proposed using her previously accrued vacation time, and because she was already on permanent medical leave, Speck would have been unable to work even if the City had demanded her presence at the clinic during the time of her proposed travel. What is perhaps most troublesome about the City's denial of Speck's request, however, is that the request covered a weekend trip that would have taken place on Speck's personal time. The City exercised its authority to administer its policies in a manner that inserted the City into every moment of Speck's life, essentially confining her to her home because it believed simply that it could. Given what amounted to a "stay at home or be fired" ultimatum, it is not surprising that Speck resigned.

Moreover, for approximately two years after a flawless fifteen-year tenure, the City began repeatedly charging Speck with violations of City policy, including the misappropriation of funds; making false statements; incompetence; filing false claims for sick-leave benefits; hindering the operation of the City through absenteeism, regardless of the reason; insubordination; and misrepresenting her role. The City ultimately determined that many of the charges were baseless, and the record indicates that the lack of foundation of the charges, in many instances, was plainly apparent from evidence in the City's possession before it levied the charges. The City's harassment of Speck continued even after she took permanent medical leave. During that time, the City continued to bother Speck about her absenteeism and her failure to complete her job requirements. The City even charged her with insubordination for failing to accept various assignments from her supervisors, despite the fact that Speck had completed one of the assignments and was unable to accomplish the others because of her documented medical leave. A reasonable jury could conclude

that there was no purpose for the City's actions other than to encourage Speck to leave her employment. Once she did, the City immediately replaced Speck with a younger worker, and attempted to do so covertly.

Contrary to the majority's characterization, then, this is not a case where evidence of pretext is confined to the fact that Speck was replaced by a younger employee. That fact, coupled with the City's attempt to conceal the identity of Speck's replacement, the baseless denial of Speck's travel request, and the questionable justification behind the City's various disciplinary actions, together present sufficient evidence to allow a jury to reject the City's rationale for taking the actions that culminated in Speck's resignation and to conclude that she suffered age-based discrimination in her employment.

I further believe that Speck has presented a triable issue as to whether she suffered a hostile work environment based on age. *See Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996). As outlined above, the City's harassment of Speck was frequent, severe, and had extreme consequences for Speck's physical health. Again, not only was Speck replaced by a younger worker, but the City attempted to conceal that fact from Speck, and I believe that this is sufficient evidence to allow a reasonable jury to conclude that the City's harassment of Speck was age based.

The manner in which the City treated Speck, only partially outlined above, was suspect. The record suggests that Speck is a capable forensic nurse who has provided beneficial service in her field for the City of Memphis and nationally, and based on the record before us, I believe that Speck has raised triable issues regarding whether she was constructively discharged and subjected to a hostile work environment based on her age in violation of the ADEA. Viewing the record in the

No. 09-5213
*Speck v. City of Memphis*

light most favorable toward Speck, as we must in evaluating the summary-judgment motion of the

City, I would reverse the district court's grant of summary judgment, and I must respectfully dissent.